UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY LAMAR BARNETT, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 4:19-CV-002673-SEP |
| ANDREW M. SAUL, | ) ) ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. §§ 405(g) for judicial review of the final decision of Defendant Andrew M. Saul, the Commissioner of Social Security, denying the application of Plaintiff Timothy Lamar Barnett for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the Act). Because there is substantial evidence to support the decision denying benefits, the Court will affirm the Commissioner's denial of Plaintiff's application.

**I.     BACKGROUND**

On April 14, 2014, Plaintiff applied for SSI, alleging that he had been unable to work due to disability as of that date. (Tr. 141-46, 1051). His application was initially denied (Tr. 60-74, 78-84) and Plaintiff subsequently filed a Request for Hearing by Administrative Law Judge (ALJ). (Tr. 85-87). Following a hearing, the ALJ, in an opinion issued on July 18, 2016, found that Plaintiff was not under a "disability" as defined in the Act. (Tr. 8-24). Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's (SSA) Appeals Council, which denied his Request for Review. (Tr. 1-7).

Plaintiff filed for judicial review in this Court (Tr. 871-882), and on February 13, 2018, the Court remanded the case to the agency for further consideration (Tr. 885-886). The Appeals Council then vacated the July 2016 decision and remanded the case back to the ALJ, and in so doing, consolidated that case with an additional SSI claim that Plaintiff had filed while his

federal court case was still pending. (Tr. 887-91). On February 14, 2019, the ALJ held another hearing on Plaintiff's consolidated claims. (Tr. 809-50). The ALJ heard testimony from Plaintiff, a medical expert, and a vocational expert (VE). *Id*. In a decision dated May 31, 2019, the ALJ again denied Plaintiff's claims because he found that Plaintiff was not under a disability as defined in the Act from April 14, 2014, through the date of the decision. (Tr. 782-808). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner.

Plaintiff, who was born on July 17, 1982, was 31 years old when he initially applied for SSI, and 36 years old when the ALJ issued his decision. (Tr. 141, 801). He completed the eighth grade in 1999 and last worked in December 2009. (Tr. 1051-1052). In his disability application, he alleged he could no longer work due to intellectual disability, speech and language disorder, neck and back pain due to herniated discs, depression, post-traumatic stress disorder, hypertension, hallucinations, delusions, paranoia, and schizophrenia. (Tr. 1051).

As to Plaintiff's testimony, work history, and medical records, the Court accepts the facts as provided by the parties and will address specific facts related to the issues raised as needed in the discussion below.

**II.     STANDARD FOR DETERMINING DISABILITY UNDER THE ACT**

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); [1] *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" (RFC), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. §§ 404.1520(e). At Step Four, the Commissioner determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform her past relevant work, she is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether she can make an adjustment to other work in the national economy; if she cannot make such an adjustment, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of

---

[1] All references throughout this opinion are to the version of the regulations that was in effect as of the date of the ALJ's decision.

3

other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

### III.   THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff had not engaged in substantial gainful activity since April 14, 2014, the alleged onset date; that Plaintiff has the severe impairments of the residual effects of obesity, anxiety, depression, degenerative joint disease and degenerative disc disease, polysubstance abuse, neurocognitive disorder, and status post gunshot wound; and that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 788). The ALJ found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. §§ 416.967(b), except with no climbing ladders, scaffolds, or ladders, occasional climbing ramps and stairs; occasional balancing, stooping, crouching, crawling, and kneeling, and frequent reaching handling and fingering. The ALJ further found that Plaintiff must avoid all exposure to moving machinery and unprotected heights, and that Plaintiff's job responsibilities shall include no tandem tasks, no public interaction, and only occasional contact with coworkers with occasional supervision by supervisors. (Tr. 792).

The ALJ did find that Plaintiff is unable to perform any of his past relevant work. (Tr. 799). But considering Plaintiff's age, education, and work experience, and in reliance on the testimony of a vocational expert (VE), the ALJ found that Plaintiff would be able to perform occupations including laundry folder (Dictionary of Occupational Titles (DOT) No. 369.687-018), janitor (DOT No. 323.687-014), and bakery worker (DOT No. 524.687-022).[2] (Tr. 800). There are 100,000, 900,000, and 70,000 of these jobs, respectively, in the national economy. (Tr. 800). The ALJ concluded that Plaintiff had not been under a disability, as defined in the Act, from the alleged onset date through the date of his decision. (Tr. 801).

---

[2] The VE testified, and the ALJ noted in his decision, that the occupation of "bakery worker" is classified under the DOT code of 324.687-022. (Tr. 800, 847-48). However, the Court notes that "bakery worker" is actually classified under the DOT code of 524.687-022. *See* U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991). The Court presumes that this was an inadvertent error, and finds it to be of no significance, as the discrepancy had no effect on the Court's analysis or decision.

**IV.     STANDARD FOR JUDICIAL REVIEW**

The decision of the Commissioner must be affirmed if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole.  *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).  "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942.  *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consolidated Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the Court considers both evidence that supports that decision and evidence that detracts from that decision.  *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012).  However, the Court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'"  *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)).  "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

**V.      DISCUSSION**

Plaintiff challenges the ALJ's decision on two grounds: (1) the bold-faced statement of the RFC in the decision does not align with Plaintiff's mental limitations; and (2) the ALJ erred in relying on the VE's testimony that there was other work an individual with Plaintiff's impairments could perform if he required "occasional" supervision.  In response, the Commissioner maintains that the ALJ's decision is based on substantial evidence in the record as a whole, and any typographical errors or deficiencies in opinion writing are harmless error.

### A. RFC Determination

A claimant's RFC is "the most a claimant can do despite his limitations." *Moore*, 572 F.3d at 523 (citing 20 C.F.R. § 404.1545(a)(1)). It is the ALJ's responsibility to determine a claimant's RFC "based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). After reaching an RFC determination, the burden shifts to the Commissioner to "identify the types of jobs [a claimant] could perform notwithstanding" the limitations in his RFC, and to "ascertain whether those kinds of jobs 'existed in significant numbers in the national economy.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019) (quoting 20 C.F.R. §§ 404.1560(c)(1), 416.960(c)(1)). *See also Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001).

"For guidance on such questions, ALJs often seek the views of 'vocational experts.'" *Biestek*, 139 S. Ct. at 1152. Vocational experts "are professionals under contract with [the Social Security Administration] to provide impartial testimony in agency proceedings." *Id.* "They must have expertise and current knowledge of working conditions and physical demands of various jobs; knowledge of the existence and numbers of those jobs in the national economy; and involvement in or knowledge of placing adult workers with disabilities into jobs.'" *Id.* (internal quotation marks and alterations omitted). "When offering testimony, the experts may invoke not only publicly available sources but also 'information obtained directly from employers' and data otherwise developed from their own 'experience in job placement or career counseling.'" *Id.* at 1152-53 (quoting Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704, at *2).

It is well established that "[t]he Commissioner may rely on a vocational expert's response to a properly formulated hypothetical question to show that jobs that a person with the claimant's RFC can perform exist in significant numbers." *Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005). Where, as here, a claimant has severe mental impairments, a vocational expert's specialized knowledge is required to determine the impact of those impairments on the claimant's ability to work. *See* Social Security Acquiescence Ruling (SSAR) 14-1(8), 2014 WL 2178029 (May 22, 2014). Additionally, "[a] vocational expert's testimony constitutes substantial evidence when it is based on a hypothetical that accounts for all of the claimant's proven

impairments." *Buckner v. Astrue*, 646 F.3d 549, 560-61 (8th Cir. 2011) (internal quotation marks omitted).

Here, Plaintiff does not dispute that the vocational expert's testimony was based on a correctly phrased hypothetical question that accounted for all of Plaintiff's impairments. Instead, Plaintiff argues that the ALJ failed to include all relevant impairments discussed with the VE in the bold-faced summary of the RFC included on the eighth page of his decision.[3] (Tr. 792). Specifically, Plaintiff notes that the only mental limitations included in the bold-faced RFC finding are that Plaintiff's "job responsibilities shall not include public interaction, only occasional contact with coworkers but no tandem tasks, and occasional supervision." (Tr. 792). He argues that the ALJ should have included in the RFC additional mental limitations related to his marked limitation in understanding, remembering, or applying information, as well as his moderate limitations in concentrating, persisting, maintaining pace, and adapting or maintaining oneself.

The Commissioner argues that this discrepancy appears to be an inadvertent typographical error not requiring reversal, because the ALJ clearly found Plaintiff limited in the areas raised by Plaintiff, and no harm flowed from the error as the ALJ included the limitations in the hypothetical questions posed to the VE.

The Court agrees with the Commissioner. First, the ALJ made explicit findings in his decision indicating that he determined Plaintiff to be limited in these areas, noting at various points in the decision that Plaintiff has such mental limitations. For example, he wrote that "[i]n understanding, remembering, or applying information, the claimant has a marked limitation," and "[w]ith regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation." (Tr. 788-789). He further found that "[a]s for adapting or managing oneself, the claimant has experienced a moderate limitation." (Tr. 789). The ALJ also indicated his intention

---

[3]  The following is the bold-faced RFC finding as it appears in the ALJ's decision.

**4.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except with no climbing ladders, scaffolds, or ladders, occasional climbing ramps and stairs; occasional  balancing, stooping, crouching, crawling, and kneeling, and frequent reaching handling and fingering.  The claimant must avoid all exposure to moving machinery and unprotected heights.  The claimant's job responsibilities shall not include public interaction, only occasional contact with coworkers but no tandem tasks, and occasional supervision.**

to include such impairments in Plaintiff's RFC, noting that he would provide "a more detailed assessment" of these limitations in the RFC. (Tr. 790).

Second, after thoroughly reviewing the hearing transcript, the Court finds that the hypotheticals posed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole, notwithstanding that those impairments were not in the bold-faced RFC. (Tr. 809-850). Additionally, the VE's answers to the ALJ's questions make plain that the VE understood that she was considering hypotheticals that included all the mental limitations that Plaintiff argues are applicable to his functional capacity. When discussing jobs that would be available in the economy for a person with Plaintiff's limitations, the ALJ and the VE had the following exchange:

> ALJ: Assume a person of the claimant's age, education and work experience, who is able to perform light work. Never climb ladders, ropes or scaffolds. Occasionally climb ramps, stairs, balance, stoop, kneel, crouch, crawl. Frequently reach, handle and finger and feel. Avoid concentrated exposure to excessive vibration and extremes of heat and cold, as well as humidity. Avoid all exposure to workplace hazards, such as operational control of moving machinery and unprotected heights. Work would be limited to simple, routine, repetitive tasks, on a low stress job, defined as only occasional, simple work related decisions, in view of any workplace changes. There would be no fast paced production requirements, so no production rate pace work, such as assembly line work. Jobs would involve working in the same type of things, on a day to day basis, rather than working with people, such that there'd be only casual and infrequent contact with coworkers and no tandem tasks. Job responsibilities should not require public interaction. Occasional supervision. Would such a person be able to perform claimant's past work?
>
> VE: No.
>
> ALJ: Would there be other work?
>
> VE: Yes, there would be.
>
> ALJ: Would you cite me three examples, please?
>
> VE: There would be jobs such as laundry folder, DOT code is 369.687-018, classified as light and unskilled . . . [t]here would also be light janitorial type jobs, DOT code is 323.687-014, classified as light and unskilled, . . . and jobs such as bakery worker, DOT code is 324.687-022, classified as light and unskilled.
>
> ALJ: All right, thank you. Now, if you take hypothetical one and add the following additional limitation, that the hypothetical individual would require close supervision, defined as having supervisor checking on this person's work no more

8

> than four times a day.  Would such an added additional limitation, either preclude the other work identified in response to hypothetical one, or erode the occupational base?
>
> VE: Yes, that would eliminate unsupported work and competitive employment.
>
> ALJ: Okay, so not only those jobs, but all jobs?
>
> VE: Correct.
>
> ALJ: If you take hypothetical one and add the following additional limitation, that occupations would be limited to those that do not require complex written or verbal communication, or frequent verbal communication, no telephone communication. Would those added additional limitations eliminate the other work identified in hypothetical one, or erode the occupational base for those jobs?
>
> VE: In addition to the other limitation, with the supervision or separately?
>
> ALJ: Separately, so we're taking hypothetical one and adding those limitations and the supervisory intervention would be precluded from that hypothetical.
>
> VE: It would not require frequent verbal for any of those occupations given in hypothetical one, so that would not have an effect and generally they're given verbal instructions and demonstrations, but generally they're not going to require written communications.  So, those jobs would remain, with that hypothetical.

(Tr. 847-849).

The above exchange makes clear that the ALJ and the VE understood that they were discussing an individual with marked and moderate limitations in understanding, remembering, or applying information, as well as concentrating, persisting, or maintaining pace.  Although the RFC finding understated Plaintiff's mental limitations in these areas, the deficiency is without import, because the VE testified that even with the additional limitations asserted by Plaintiff, there would remain jobs available in the economy that Plaintiff could perform.

Because the Court finds it apparent that the ALJ made a typographical error in not including the more restrictive mental limitations in the written RFC, reversal on this basis is not necessary.  A deficiency in opinion writing does not require reversal.  *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016); *Draper v. Barnhart,* 425 F.3d 1127, 1130 (8th Cir.2005) (citations omitted) (a "deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency [has] no practical effect on the outcome of the case"); *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996) ("An arguable deficiency in opinion-writing technique is not a

9

sufficient reason for setting aside an administrative finding where the deficiency probably has no practical effect on the outcome of the case."); *see also Ray v. Colvin*, 2014 WL 1314854, at *3-4 (E.D. Mo. Mar. 31, 2014) (finding the ALJ's inclusion of "depression" and "anxiety" in the paragraph heading regarding severe impairments was a typographical error, as the body of the paragraph indicated the ALJ found those impairments to be non-severe).

Furthermore, because the VE's testimony aligned with the limitations Plaintiff suggests should be in his RFC, any error was harmless. *See Rogers v. Astrue*, 2012 WL 6049646, at *4 (E.D. Ark. Dec. 5, 2012) (Where the ALJ failed to include avoidance of hazards "in the bold-faced statement of RFC on the fifth page" of his decision, "no harm flowed from the typographical error because the ALJ included the avoidance of hazards in the hypothetical question posed to the vocational expert."). The Court finds that no purpose would be served by a remand in these circumstances. *See NLRB v. Wyman-Gordon*, 394 U.S. 759, 766 n.6, 22 L. Ed. 2d 709, 89 S. Ct. 1426 (1969) (plurality opinion) (where "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game"). The Eighth Circuit has long recognized that an error is harmless and does not require remand where the Plaintiff has not shown that the ALJ would have reached a different decision absent the error. *See Brueggemann v. Barnhart*, 348 F.3d 689, 695 (8th Cir. 2003); *Byes v. Astrue*, 687 F.3d 913, 917-18 (8th Cir. 2012) (to show that an error was not harmless, a claimant must provide some indication that the ALJ would have decided the case differently absent the error). The ALJ's failure to include all relevant limitations in the RFC summary was a simple mistake and was not outcome determinative.

### B. Degree of Supervision—"Occasional" vs. "Close"

Plaintiff's second argument also involves the testimony of the vocational expert. Plaintiff argues that the ALJ erred in relying on the VE's testimony that there was other work an individual with Plaintiff's impairments could perform if he required "occasional" supervision, which was the level of supervision the ALJ determined Plaintiff would need. (Tr. 792). As recounted *supra*, the VE testified that there was work available for an individual with Plaintiff's limitations who required "occasional" supervision, but that no work exists in the economy for such an individual who required "close" supervision. (Tr. 847-48). "Close" supervision was defined by the ALJ as requiring that a supervisor check on this person's work four times per day. (Tr. 848). Plaintiff insists that the VE testified in error, because "occasional" supervision is

10

properly characterized as being more restrictive than "close" supervision and thus, would necessarily preclude all work.

Plaintiff bases his argument on Social Security Ruling 83-10, which provides definitions of terms and concepts frequently used in evaluating disability under the medical-vocational rules for adjudicating claims in which an individual has exertional[4] (as opposed to mental) limitations. *See* Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *1 (S.S.A. Jan. 1, 1983). ("Purpose"). "Occasionally" is defined in SSR 83-10, as "occurring from very little up to one-third of the time." SSR 83-10, 1983 WL 31251, at *6. Plaintiff cites no authority suggesting that SSR 83-10 should apply in the context of a vocational expert's testimony regarding non-exertional limitations around the need for supervision, and the Court has found none. Nonetheless, Plaintiff asks the Court to graft the definition of "occasional" in SSR 83-10 onto the VE's testimony. He argues that if "occasional" means up to one-third of a workday, then "occasional" supervision must be more frequent than the four supervisory check-ins that the ALJ found to constitute "close" supervision in his hypothetical to the VE. Plaintiff asserts that "occasional" supervision is thus inherently more restrictive than "close" supervision, and if he were restricted to "occasional" supervision, as the ALJ found, then all competitive work would be foreclosed. The Commissioner argues that applying this definition of "occasional" in this context would be contrary to the plain intent of the ALJ.

The Court agrees with the Commissioner. Indeed, the Court finds Plaintiff's argument somewhat perplexing. It could not be clearer from the hearing transcript that the ALJ and the VE understood "close" supervision to be more restrictive than "occasional" supervision. The ALJ explicitly stated that he was defining "close" supervision as four times per day, and stated more than once that he intended "close" supervision to constitute an additional, more restrictive limitation, layered on top of his previous hypothetical that included only "occasional" supervision. (Tr. 848-49). The VE clearly understood the distinction, and her response—that

---

[4] The SSA classifies jobs in the national economy as either sedentary, light, medium, heavy, or very heavy. 20 C.F.R. § 404.1567. The classifications are based on the physical exertion requirements of jobs in each classification. *Id.* The classifications refer to various exertional requirements, denoting how often such exertional demands are required at each level of work. *Id*. For example, sedentary work is defined as "work [that] involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." *Id.* In contrast, light work is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." *Id.*

11

adding the restriction of "close" supervision would foreclose all employment—was based on that understanding. (Tr. 848). Additionally, the term "occasional" is a term often used by ALJs while questioning vocational experts about available work, and the VE did not indicate that she did not understand the word as it is commonly used, or as it was used here. *See Crow v. Berryhill*, 2019 WL 1001211, at *4 (E.D. Mo. Mar. 1, 2019) (VE did not express that she misunderstood the ALJ's hypothetical, which contained commonly used term "occasional" in the social security context).

Furthermore, Plaintiff's representative had the opportunity to ask questions of the vocational expert if she found the terminology used to be unclear, but she did not seek any clarification at the hearing. (Tr. 849). In fact, when the ALJ presented her with the opportunity to follow up with the VE, Plaintiff's representative expressly declined to ask any additional clarifying questions. (Tr. 849-50). Because Plaintiff's representative did not raise this issue when given the opportunity to do so, the ALJ was entitled to accept and rely on the VE's testimony. *See Alie v. Berryhill*, 2017 WL 2572287, at *15-17 (E.D. Mo. June 14, 2017) (the failure to identify alleged conflicts in the VE's testimony at the time of the hearing "is not without consequence").

Finally, the occupations identified by the vocational expert and relied upon by the ALJ at Step Five do not appear to require anything more than superficial or incidental contact with supervisors. Specifically, the ALJ concluded that Plaintiff was not disabled because he could perform the jobs of laundry folder (DOT No. 369.687-018), janitor (DOT No. 323.687-014), and bakery worker (DOT No. 524.687-022). The DOT descriptions for each of these jobs indicate that interacting with people, including supervisors, is not a significant aspect of the occupation. The fifth digit of the DOT occupational code for all three jobs is "8," meaning that these jobs involve the lowest level of complexity in relating to people. *See* DOT, Parts of the Occupational Definition, 1991 WL 645965 (explaining that the fifth digit of each occupational code reflects the level of interaction with people necessary for that particular job, with "8" referring to "taking instructions - helping" and signifying the lowest level of complexity and interaction with others).

Accordingly, the Court finds Plaintiff's argument on this point entirely without merit.

## VI.   CONCLUSION

Having reviewed the entire record, the Court determines that the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

Dated this 31st day of March, 2021.

*Sarah E. Pitlyk*

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE